**FILED**

**July 27, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 9:02 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| Stephanie Johnson | ) Docket Nos.: 2016-01-0108 |
| | ) 2016-01-0109 |
| Employee, | ) |
| | ) State File Nos.: 10778-2015 |
| v. | ) 687-2016 |
| | ) |
| Integrity Staffing Solutions, Inc. | ) Judge Audrey A. Headrick |
| Employer. | ) |
| | ) |

## EXPEDITED HEARING ORDER DENYING
## REQUESTED BENEFITS

These matters came before the Court on June 16, 2016, on Requests for Expedited Hearing filed by the employee, Stephanie Johnson, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether Ms. Johnson is likely to prevail at a hearing on the merits in proving entitlement to medical benefits and temporary partial disability benefits regarding an alleged aggravation of her pre-existing cervical and back conditions. For the reasons set forth below, the Court finds Ms. Johnson did not come forward with sufficient evidence to prove she is likely to prevail at a hearing on the merits at trial; thus, she is not entitled to medical or temporary partial disability benefits.[1]

### History of Claim

Ms. Johnson filed Petitions for Benefit Determination on February 17, 2016, seeking medical benefits and temporary partial disability benefits. The parties did not resolve the disputed issues through mediation, and the mediator filed Dispute Certification Notices on April 6, 2016. Ms. Johnson filed Requests for Expedited

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

1

Hearing, and this Court heard these matters on June 16, 2016.[2]

Ms. Johnson is a forty-three-year-old resident of Walker County, Georgia. Integrity, a temporary staffing agency, hired her on November 13, 2015. Ms. Johnson alleged a neck and back injury on December 18, 2015, while working at Amazon when a co-worker pushing a cart struck her left hip. Approximately nine days later, Ms. Johnson alleged additional injuries to her neck, back and right thigh on December 27, 2015, when she tripped over an empty tote cart in the walkway at Amazon. Integrity stipulated Ms. Johnson provided notice for both dates of injury. It further stipulated to the compensability of Ms. Johnson's right-thigh injury sustained on December 27, 2015.

Ms. Johnson's testimony and documentary evidence submitted at the expedited hearing revealed the history concerning her two claims. Immediately after the cart incident on December 18, 2015, Ms. Johnson went to AmCare, Amazon's on-site medical clinic. (Ex. 27.) She completed an AmCare Associate First Report of Injury form indicating the cart struck her left "lower back but [sic] cheek." *Id.* Ms. Johnson wrote, "the cart bounced off my lower back but [sic] cheek wen [sic] [the co-worker] hit me with rebin cart." *Id.* When asked if outside medical treatment was offered, Ms. Johnson wrote "panel." *Id.* Under "Declined Outside Medical Treatment," she checked "yes." *Id.*

Although Ms. Johnson declined a panel at that time, the AmCare provider gave Ms. Johnson the business card of Joe Holland, safety Manager for Integrity, and told her to contact him before she went to a doctor. *Id.* The record reflects Ms. Johnson replied, "well, I want to make sure I go see a doctor that's going to say the right thing . . . I'll probably go to the one by Erlanger." *Id.* Ms. Johnson also admitted she had "a history of lower back problems as a result of an injury that occurred while working for another company (Standifer Place)." *Id.* During the hearing, Ms. Johnson acknowledged she previously had a similar claim against Standifer Place for her neck and back.

Ms. Johnson subsequently requested and received a panel from Mr. Holland on December 22, 2015. (Ex. 33.) Since Ms. Johnson complained of significant low back pain, Integrity provided a panel containing back specialists from which she selected Dr. Timothy Strait. Prior to seeing Dr. Strait, Ms. Johnson sustained a second work injury on December 27, 2015. While walking to her workstation, Ms. Johnson fell over an empty tote cart. She testified she fell on her right side, landed on her back, and may have hit her head. Again, Ms. Johnson presented to AmCare.

Ms. Johnson testified she disputes the accuracy of the information documented by AmCare at her December 27, 2015 visit. During Ms. Johnson's visit to AmCare, she

---

[2] The Court heard both of Ms. Johnson's claims during one expedited hearing, which lasted approximately five hours.

provided a statement to Integrity that she signed electronically. (Ex. 7.) A witness, Sierra Johnson, Ms. Johnson's daughter, was with her at AmCare when she completed the report. Sierra testified the AmCare provider asked her mother questions about what happened and typed in her responses. When defense counsel read the report aloud, Sierra stated it did not include that her mother hurt her back on December 27, 2015.

Ms. Johnson testified she had the opportunity to review and correct the statement provided to Integrity. However, she stated that she was tired. Ms. Johnson also stated she did not remember electronically signing the report. Mr. Holland testified that the e-signature verification only occurs after an employee correctly answers personal identity questions. On the same day, Ms. Johnson signed a Case Closure Request requesting that her "case with AMCARE be closed." (Ex. 22.) However, the form stated she was "free to return to AMCARE for treatment at any point in time."

Later that day, Ms. Johnson testified she went to an emergency room after she returned home because she "began feeling immediate pain all over." Ms. Johnson acknowledged having Mr. Holland's business card with his contact information. She also acknowledged that AmCare personnel told her to call Mr. Holland if she needed medical treatment. However, Ms. Johnson stated she thought she had lost his card.

Ms. Johnson returned to work the following day on December 28, 2015. She testified she tried to work but had to tell her manager, "Baboo," that she "could not take it anymore." Ms. Johnson proceeded to wait in the breakroom for her daughter, Sierra, to get off work. However, before leaving work, Ms. Johnson also spoke with Mr. Holland and Eric Townsend, a safety specialist. She testified that Mr. Holland was furious because she went to the emergency room. Ms. Johnson alleged that Mr. Townsend suspended her because she went to the emergency room, and Mr. Townsend and Mr. Holland were unwilling to look at her medical papers.

Mr. Holland testified he did not see any medical papers when Ms. Johnson spoke with him and Mr. Townsend. Since Ms. Johnson went to the emergency room without his knowledge and provided no work restrictions, he stated Integrity's policy is to have the employee evaluated by a workers' compensation doctor. Mr. Holland's staff provided Ms. Johnson with a panel of physicians, and she chose Workforce Corporate Health. (Ex. 24.) He stated he did not provide a back panel to Ms. Johnson because she had reported a right thigh injury on December 27, 2015, and he had no knowledge her back was involved. Mr. Holland also explained that Ms. Johnson was in "suspended status" to keep her from getting points while waiting for her evaluation with Workforce. Ms. Johnson did not return to work after December 28, 2015.

Ms. Johnson saw Dr. Jayant Eldurkar at Workforce on January 5, 2016. (Ex. 23.) She listed the body parts injured on December 27, 2015, as "neck, mid back, low back, right hand, low back, hip pain." *Id.* Ms. Johnson gave a history of tripping over a cart

3

and falling on her right side at work on December 27, 2015. Ms. Johnson told Dr. Eldurkar she sought emergency treatment at Parkridge, and all x-rays taken of her cervical, thoracic, lumbar spine and right femur were normal. *Id.* She also told Dr. Eldurkar about the cart hitting her low back at work on December 18, 2015. *Id.* The record reflected Ms. Johnson "was uncooperative throughout the examination." *Id.*

Although Dr. Eldurkar diagnosed Ms. Johnson with a lumbar and cervical sprain/strain, an addendum stated:

> During checkout this patient was observed to bend forward while standing at the front desk without any difficulty. She is also observed walking to her car with a normal gait. She was able to get into the passenger side of the car without any difficulty or assistance.

*Id.* Dr. Eldurkar prescribed medication, ordered a cervical and lumbar spine MRI, and released her to return to work with restrictions. *Id.*

On the Health Care Provider Request for Medical Information (RMI) form signed by Dr. Eldurkar on January 5, 2016, he listed his diagnoses as cervical and lumbar sprain/strain and right thigh contusion.[3] *Id.* In response to form questions regarding whether the injury was work-related, he checked "undetermined." *Id.* Although he provided work restrictions, Dr. Eldurkar also wrote, "[n]o restrictions related to R thigh contusion."[4] *Id.* Following Ms. Johnson's visit with Dr. Eldurkar, Mr. Holland testified he attempted to reach her January 6, 2016, through January 8, 2016, about returning to work. He also stated he sent an e-mail to Ms. Johnson.

On January 19, 2016, Ms. Johnson saw Dr. Timothy Strait.[5] (Ex. 8.) As previously noted, Ms. Johnson selected Dr. Strait from a panel for her December 18, 2015 injury. However, the history given to Dr. Strait indicated the following:

> [Ms. Johnson] is seen in neurosurgical consultation for continued neck and lower back pain that she relates to a work-related injury, which occurred on December 27, 2015. However, she did report a previous injury occurring on December 18, 2015, but she continued to work. She reports that the second injury clearly worsened her neck and lower back pain. She has been unable to work since the injury. She reports having some previous neck and lower back problems.[6]

---

[3] Ms. Johnson testified that she still has a bruise on her right thigh.

[4] Ms. Johnson perceived Dr. Eldurkar's attitude as uncaring and biased. She described his staff as rude and disrespectful.

[5] At the expedited hearing, Integrity stipulated it would pay an outstanding medical bill for UT Erlanger.

[6] At the expedited hearing, Ms. Johnson alleged that her degenerative disc disease "reactivated" when she fell.

4

*Id.* After performing a physical examination of Ms. Johnson and reviewing cervical, thoracic and lumbar spine x-rays, Dr. Strait opined her condition did not indicate an ongoing nerve root compression syndrome. *Id.* For that reason, he declined Ms. Johnson's request for cervical and lumbar MRIs. Dr. Strait recommended three weeks of physical therapy, placed her on restricted duty, and released her to return to normal work duties after completing therapy.[7] *Id.* On the RMI form, Dr. Strait marked "undetermined" regarding causation of Ms. Johnson's diagnoses. *Id.* When later asked by Integrity's workers' compensation carrier to opine whether the cart incident on December 18, 2015, caused her diagnoses, Dr. Strait responded on February 1, 2016, and wrote "<50%." *Id.*

Ms. Johnson disagreed with Dr. Strait's medical opinion and went on her own to Southeastern Spine Specialist for a second opinion from Physician's Assistant Jessica Scott. Although she stated she saw Ms. Scott through February 16, 2016, Ms. Johnson did not admit any supporting medical records into evidence. However, she did admit a letter dated April 21, 2016, signed by Ms. Scott and Dr. Jay Jolley. (Ex. 16B.) The one-sentence letter states, "[t]he work injury could have aggravated the pre-existing cervical DDD." *Id.*

During the expedited hearing, the parties testified regarding the circumstances surrounding Integrity's offers of sedentary work to accommodate Ms. Johnson's restrictions. Mr. Holland met with Ms. Johnson on January 26, 2016, to discuss returning to work. He offered her a sedentary position, and she signed a Transitional Work Offer Letter accepting the position. (Ex. 15.) However, the following morning, Ms. Johnson left Mr. Holland a voice message stating she could not return to work due to her pain level. Mr. Holland sent a letter to Ms. Johnson the next day verifying the transitional work assignment was still available. (Ex. 2.) When Ms. Johnson replied by e-mail, she reiterated that she had called Mr. Holland on January 27, 2016, advising she had severe low back pain. (Ex. 9.) She also expressed her belief that Mr. Holland was supposed to schedule her for re-evaluation by Dr. Strait due to her continued pain. *Id.* Ms. Johnson did not return to work after December 28, 2015, and she asserted she is still not ready to return to work.

Ms. Johnson argued the evidence showed she is entitled to medical benefits and temporary disability benefits for her December 18, 2015 and December 27, 2015 claims regarding her pre-existing cervical and back conditions.[8] Ms. Johnson argued that Dr. Jolley's causation opinion stated her condition is work-related, which contradicts Dr. Strait's opinion.

Regarding Ms. Johnson's request for medical benefits, Integrity argued that the

---

[7] Ms. Johnson attended physical therapy at Benchmark from February 3, 2016, through February 18, 2016.

[8] She contended everyone treated her unfairly and asserted it was unsafe for her to return to work in her condition.

medical evidence does not satisfy the statutory definition for "injury" set forth in Tennessee Code Annotated section 50-6-102(14) (2015). Dr. Eldurkar, the panel physician for Ms. Johnson's December 27, 2015 claim, was unable to determine if her work injury caused her diagnoses. Dr. Strait, the panel physician for Ms. Johnson's December 18, 2015 claim, was aware of both work incidents and opined that her employment did not contribute more than fifty percent in causing her cervical and back conditions.

Integrity contended the panel physicians' opinions on causation are presumed correct under Tennessee Code Annotated section 50-6-102(14)(E) (2015). It also contended Dr. Jolley's opinion does not satisfy the statutory definition of "injury" and fails to overcome the presumption of correctness given to the panel physicians. Additionally, Integrity argued Ms. Johnson is not entitled to reimbursement of her emergency room visit to Parkridge Medical Center because she sought treatment on her own without first contacting Mr. Holland or requesting a panel of physicians.[9]

Regarding Ms. Johnson's request for temporary partial disability benefits, Integrity argued she is not entitled to any such benefits. Integrity contended Ms. Johnson failed to accept the light duty work it offered to her that was within her restrictions. It further contended Ms. Johnson chose not to return to work despite her restrictions remaining unchanged.

### Findings of Fact and Conclusions of Law

Ms. Johnson has the burden of proof on all essential elements of her workers' compensation claim. *Tindall v. Waring Park Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987);[10] *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). She is not required to prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Ms. Johnson has the burden to come forward with sufficient evidence from which the trial court can determine that she is likely to prevail at a hearing on the merits. *Id.*

The Court finds Ms. Johnson failed to demonstrate a likelihood of success on the

---

[9] The Court will not address the specific issue of Ms. Johnson's emergency room visit to Parkridge Medical Center since no medical bill or medical record regarding the visit was admitted into evidence during the expedited hearing.

[10] The Tennessee Workers' Compensation Appeals Board allows reliance on precedent from the Tennessee Supreme Court "unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 n.4 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

merits at trial regarding an aggravation of her pre-existing cervical and back conditions in relation to her December 18, 2015 and December 27, 2015 claims. As explained by the Tennessee Workers' Compensation Appeals Board, Ms. Johnson "can satisfy the burden of proving a compensable aggravation if: (1) there is expert medical proof that the work accident 'contributed more than fifty percent (50%)' in causing the aggravation, and (2) the work accident was the cause of the aggravation 'more likely than not considering all causes.'" *Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40, at *13 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015). However, Dr. Strait, the panel physician for Ms. Johnson's December 18, 2015 claim, opined the work accident contributed less than fifty percent in causing any aggravation. (Ex. 8.) Dr. Eldurkar, the panel physician for her December 27, 2015 claim, checked "undetermined" regarding his diagnoses. (Ex. 23.)

Under the Workers' Compensation Law, the panel physician's opinion regarding causation "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E) (2015). Ms. Johnson must rebut the presumption of correctness regarding the medical opinions of Dr. Strait and Dr. Eldurkar in order to prevail. However, the only medical proof relied upon by Ms. Johnson is the opinion of Dr. Jolley, who opined, "[t]he work injury *could have* aggravated the pre-existing cervical DDD." (Emphasis added.) (Ex. 16B.) Language such as "could have" was previously acceptable in addressing causation for pre-Reform cases. However, under the Workers' Compensation Reform Act of 2013, reliance upon medical opinions based on "speculation or possibility" are no longer permissible. *See* Tenn. Code Ann. § 50-6-102(14)(D). Therefore, Ms. Johnson's medical proof failed to rebut the presumption of correctness regarding the panel physicians' causation opinion.[11]

With this finding in mind, the Court considered whether Ms. Johnson is likely to prevail at a hearing on the merits regarding an aggravation of her pre-existing cervical and back conditions. Ms. Johnson is only entitled to medical treatment "made reasonably necessary by [the] accident." Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). Based upon the opinions of Drs. Strait and Eldurkar, the medical treatment requested by Ms. Johnson for her pre-existing cervical and back conditions is not "made reasonably necessary by [the] accident[s]." *Id.* Accordingly, Ms. Johnson has not demonstrated that she is likely to prevail at a hearing on the merits regarding the issue of medical benefits, and the issue regarding temporary disability benefits is rendered moot.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Johnson's request for medical benefits is denied.

---

[11] As previously indicated, Integrity stipulated to the compensability of Ms. Johnson's right thigh injury sustained on December 27, 2015.

7

2. Ms. Johnson's request for temporary partial disability benefits is denied.

3. This matter is set for a status conference on **August 18, 2016, at 2:00 p.m., ET**.

   **ENTERED this the 27th day of July, 2016.**


   _____
   **Judge Audrey A. Headrick**
   **Court of Workers' Compensation Claims**


Status Hearing:

A Status Hearing has been set on August 18, 2016, at 2:00 p.m. Eastern Time, with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board

8

will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Affidavit of Stephanie Johnson (December 18, 2015 DOI)
2. Letter from Joe Holland to Ms. Johnson dated January 27, 2016
3. E-Mail from Joe Holland to Ms. Johnson dated February 5, 2016
4. Wage Statement (December 18, 2015 DOI)
5. Wage Statement (December 27, 2015 DOI)
6. No Exhibit[12]
7. Ms. Johnson's statement given to Integrity on December 27, 2015
8. Medical records of UT Erlanger Neurosurgery Group
9. E-Mail from Ms. Johnson to Mr. Holland dated January 30, 2016
10. Cervical MRI performed April 10, 2015, Marked for Identification Only
11. Cervical MRI performed February 23, 2016, Marked for Identification Only
12. Cervical x-rays performed December 27, 2015
13. Amazon job description, Marked for Identification Only
14. Benchmark physical therapy records
15. Transitional Work Offer Letter dated January 26, 2016
16A. Cover letter from Ms. Johnson to Clerk with attachments, June 13, 2016, Marked for Identification Only
16B. Correspondence from Jay Jolley's office dated April 21, 2016
17. Form C-23 Notice of Denial of Claim for Compensation regarding cervical/lumbar strain (December 18, 2015 DOI), Marked for Identification Only
18. Form C-23 Notice of Denial of Claim for Compensation regarding work restrictions (December 18, 2015 DOI), Marked for Identification Only
19. Integrity Workforce employee profile of Ms. Johnson
20. No Exhibit
21. Integrity Staffing Medical Treatment Acknowledgment
22. Case Closure Request
23. Medical records of Workforce Corporation Health
24. Form C-42 Agreement Between Employer/Employee Choice of Physician (December 27, 2015 DOI)
25. Pharmacy receipts for Walmart, Marked for Identification Only
26. Amazon records, Marked for Identification Only
27. AmCare Associate First Report of Injury (December 18, 2015 DOI)
28. AmCare medical records (December 18, 2015 DOI)
29. Form C-23 Notice of Denial of Claim for Compensation (December 27, 2015 DOI)
30. Form C-20 Employer's First Report of Work Injury or Illness (December 27, 2015 DOI)

---

[12] For those entries labeled as "No Exhibit" in the Appendix, the Court consolidated certain documents with other exhibits at the request of the parties.

31. Prescription, Marked for Identification Only
32. Form C-20 Employer's First Report of Work Injury or Illness (December 18, 2015 DOI)
33. Form C-42 Agreement Between Employer/Employee Choice of Physician (December 18, 2015 DOI)

Technical record:[13]
1. Petitions for Benefit Determination, February 17, 2016
2. Dispute Certification Notices, April 6, 2016
3. Requests for Expedited Hearing, April 6, 2016
4. Notice of Expedited Hearing, May 25, 2016

---

[13] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Denying Requested Benefits was sent to the following recipients by the following methods of service on this the 27th day of July, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|------|----------------|------------------|---------|------------|-----------|----------------|
| Stephanie Johnson | | | | | X | diversity221@yahoo.com |
| Charlie Poss | | | | | X | charlie.poss@leitnerfirm.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov